Cullen v. Mello Mr. Jones. Good morning, your honors. May it please the court, my name is Gregory A. Jones. I'm with Fasano and Tomasowicz. I represent the plaintiff appellant, Justin Cullen. This case is unique, I think, in a lot of different due process type claims. Right now, we're not claiming, and Mr. Cullen is not claiming, any interest in his employment. That is not the issue in this case, and I think that confuses some of the issue, especially with the district court's decision. What is at issue here is his certification card, just that physical card itself. Without that card, he can't perform his actual policing duties. He is employed as a police officer. That's not disputed, and the appellees even admit he is a certified police officer, but they refuse to give him that certification card. Why is that so shocking as to violate due process? Now, you know, I may understand that he may have a property interest. I'm not sure. The lower court said no. That's a state question, and the question of whether property for due process is the same federal as state is an interesting question. But ultimately, when we're deciding substantive due process, we have to find that something is shocking. And he may have a state action. He may have a state claim. But I have a little trouble getting shocked when somebody who has lost his license for all sorts of reasons, which we're assuming are good at this stage of the thing, that post doesn't give him a license. Does that shock me? I can completely understand that perspective, but you actually said something right there that's not correct. He did not lose his license. He is a certified police officer. They did not decertify him. No, no, I understand. But they said he should not be hired. Yes, and what shocks the conscience for a substantive due process claim can be where an agency exceeds its power. Post, the police officer stands at training council. If this exercise of power is based on a good faith misreading of the regulation or statute, then why is that conscience shocking? It seems like this is an arguable, although maybe wrong, reading of the statute. No, and I agree with you. But there are a variety of cases where an agency that exceeds its statutory authority, that's deemed to be ultra-various. Well, it can be that when an agency exceeds the statutory authority, it is shocking. But it doesn't necessarily make it shocking. And again, the district court dismissed the state actions without prejudice. So that any number of rights that this guy might have because of mistakes or wrongdoings at the state are there. The question is, should we wheel in the whole federal constitution? Well, that's precisely why these procedures were in place for decertification, for certification, for giving these cards to individuals when they've met the standard requirements. If they wanted to decertify this individual, they could have. They knew how to do it. I'm not saying ultimately it would succeed, but there's procedure in place for decertification. They didn't do that. All they said was, we're not going to give you that card, and there is no statutory authority to do that. And we briefed this issue before the actual agency itself, saying, you don't have the authority to do this. And they still decide, well, we're just not going to issue this card. Well, so he had a hearing. He did. And he was represented by counsel, and there was evidence. Yes. Why was that not sufficient? Because there was no actual procedure in place for how that was supposed to be run. There was no who had the burden of proof, who had the burden of persuasion. The standard in place that normally is for decertification, you get a notice of what is the actual allegation. Are you now arguing procedural due process? Well, I interpret that as No, I mean, I'm just curious. Yes, Your Honor. That's a different argument, and there we have to ask whether Matthew V. Eldridge and those things were met. Correct. And I believe that was what the question was directed towards, so I'm responding accordingly. When you have a decertification proceeding under Connecticut law, you're notified of what is that one of the 11 circumstances warranting decertification. You then have the opportunity to respond, and there is an actual hearing where the state has the burden of proof. Here, with we're not going to issue your card, that's not first delineated as a procedure. There was no notice of what exactly was the crime, I guess, alleged. There was no, the state itself didn't put on witnesses, didn't provide any evidence other than that redacted internal affairs investigation, and the burden was placed entirely on Mr. Cullen to go and essentially prove his innocence. That's not how the procedure is supposed to work in any form, especially if this were to be a decertification proceeding. That's not how it works. Now, we could look at it again and say, well, he was still given that opportunity for hearing. He was still given some type of process. But I fall back to the idea that there is no process for not issuing a certification card. He's a certified police officer, and the definition of certification means an actual issuance of the card. If he is certified, which everyone admits he is, they have to actually provide him that card. That's what it means to be certified. It's somewhat of an, I don't even know how to explain it. It's unclear to me how they can say, well, he is certified, but when the statute itself defies certification's issuance of the card, then say, well, we're not going to give him the card. And the appellee's argument in their brief even acknowledges the idea that we're not giving him the card because we don't want him to work. That's not how this works. Is it that they don't want him to work or that they viewed this other statute and said, look, why are we going to give this guy a card when the other statute says he can't work as a police officer in Connecticut? They are the Attorney General's office, Your Honor. I understand that. And they could. Counsel? Counsel? Yes, Your Honor. Sorry. I'm picking up on the fact that you just said that the basis for this was, quote, they don't want him to work. Yes, Your Honor. I was getting to that. If they didn't want him to work, they could have instituted some other proceeding to stop him from working. He was employed. He's an employed police officer. He's just not on the road doing the police officer duties. Again, I keep coming back to isn't this all a matter of state? Law, state behavior, state things. And to get us to say that these are things that raise federal constitutional issues is to wheel in a totally different thing. He has his rights under the state. The state can decide what the law was, what it wasn't, whether he had this right or not. But to say that this is so shocking, that he has a substantive federal constitution or that the procedures were such that for federal constitution he was violated seems to me to get federal courts into something that we really shouldn't get involved in. And I respect that. And frankly, I do agree with you to a certain extent. But his only remedy under state law was the Administrative Procedures Act. And the court said you don't have that resolution there. You don't have that right. We don't know what his remedy under state law is. We know that the federal court dismissed his federal case. Correct. Without the state case, without prejudice. So that he can bring whatever state actions he might have. And I don't know what they are. I'm not from Connecticut. But that doesn't mean I know all of Connecticut law. I hear you, Your Honor. And I would respectfully disagree, I guess. And that's my time. Okay, you're reserved a couple minutes for rebuttal. Thank you. Ms. Meskel. Good morning, Your Honors. May it please the court, I am Assistant Attorney General Ashley Meskel. Present with me at council table is Assistant Attorney General Phil Miller. Representing the appellee, Chief Keith Mello. Chairman of the Connecticut Police Officer Standards Trading Council. Which I'll refer to as POST-C. Your Honor, we maintain that POST-C's interpretation of 7-291C is correct. But even if this. Let me ask you that, Ms. Meskel. Is POST empowered to interpret that statute? How does that come within the ambit of what POST does? When there's a statute that says, here are these three things you have to do to get your card. What gives POST the right to interpret the malfeasance statute? Correct, Your Honor. So, the regulation that gives POST, that outlines those three qualifications to give someone their card. Is regulation 7-294, I'm sorry, 7-294E-14A. And as I explained in my brief, you cannot read that regulation in isolation. When you have a statute, you have to interpret the entire statutory scheme. And when you have a situation where the regulation says, if an individual does A, B, and C. They can be a certified police officer. But then you have a statute that says a person cannot be hired as a police officer in the state of Connecticut. Having resigned while under investigation for malfeasance or serious misconduct. You can't read the regulation in isolation of the statute. That would, I'm sorry, Your Honor. The statute is mighty clear. Correct. So, you have to be arguing that Connecticut may read its statutes in a context in which it ignores the precise language to do other things. But brings the whole context in, which of course Connecticut can do. Connecticut may ignore what the Supreme Court has taught us to do to read language precisely. Connecticut can do what it wants with its statutes. And then the question is whether that shocks us federally. Correct. Bringing us back to the causes of action here, which is a substantive and procedural due process claim. We maintain that our interpretation of 291C is correct. But even if this court, this body, were to decide that post-decision not to release a certification card to plain bill for an individual who resigned while under investigation for sexual assault. That does not rise to the level of conscious shocking. And we maintain for four reasons as outlined in our brief. One, and- So, let me understand. Sure. One, you're saying that they are not really violating the statute. Correct. They are not violating the statute. Despite the way the statute reads. Despite the way the statute reads. Correct. Because Connecticut can do odd things to statutes. And two, that even if they are violating it, that isn't shocking. That's right, Your Honor. Is that your argument? That is my argument. Asking Post C to release a- I want to go back and talk about this card for a minute. But asking Post C to release a card to an individual who legally cannot be hired as a police officer in the state of Connecticut is not conscious shocking. My friend on the other side- Well, it's arguably an exercise of agency discretion that Post doesn't have. Are you referring to the ultra-virus argument? Yeah, that was the argument your friend is making. Sure. Your Honor, and I noticed my colleague cited the- and I'm going to mispronounce this- CNA SK-8 case that this court authored. It's talking about that, but I- again, this is a statutory scheme that has to be interpreted together. And Post is charged with interpreting 7-291C. So, in my opinion, I respectfully disagree with my colleague that it can be ultra-virus if you're simply mistaking your application- There are many cases in Connecticut that tell us about how a statute- an agency has a power to interpret a statute contextually or linguistically or so on. I mean, do- you are- I'm going now to your first argument, not your second argument. Your first argument is that this wasn't really a violation of a statute because of how Connecticut can read its statutes. Do you have any cases that help us with that? Yes, Your Honor. Just one moment, if I may. So, on page 30 of my brief, I talk about- and I- you know, this is off the top of my head- but I talk about the fundamental principles of statutory construction. And you shall not- there's a case called Hope v. Cortinus. It's 872 F. Supp. 1421. And it says the court shall not interpret an agency regulation to thwart a statutory mandate. So, saying that POC has to release this card to an individual who cannot be hired as a police officer thwarts the entire purpose of 7291. Let me tell you a problem I have. If that were all that there were, then I, crazy certifier, might say let's certify to Connecticut to find out whether this statute was violated. My problem with that is that Connecticut says only do it when it's definitive. And if we have problems with whether this is shocking, then it's hard to say that it's definitive. We would have to say that it was shocking in order to make this be definitive. Because if it's not shocking, then we would decide the same way regardless, and so certification would be wrong. Correct. This court, of course, has the authority and can certify this question back to Connecticut. But I come back to the four points I outlined in my brief as to why this doesn't rise to the level of substantive due process violation. If I may, I'd like to talk a little bit about this card, if that is OK with the court. The card is inextricably intertwined to the job. Officer Cullen at the time was a certified Manchester police officer. I can point the court to appendix A026. There's a little image of the front of the card there. And it says Manchester Police Department. The moment he resigned, his certification is inactive. He's no longer employed with Manchester. So what has to happen is Post would have to release a new certification card to Plainville for him to work as a Plainville police officer. These certification cards aren't certified in the air. It's unlike a bar license, for example, where if I resigned from the attorney general's office tomorrow, I could go on my own and hang a shingle and work. You can't be an independent police officer. There is no point to having this card other than to work. But once an officer has completed the training requirements, what discretion does Post C have to take back and issues the card? What discretion does it have to take it back? Where does that come from? Your Honor, Post C isn't taking back the card. What happened here is you had an individual who resigned from Manchester, no longer employed. So his Manchester certification card is inactive. He resigned while under investigation for malfeasance, sexual assault. And Trott now has another jurisdiction that's trying to hire him and saying, in spite of this, in spite of 7291C, even though that law says we can't legally hire you, we're going to, issue us his card. Post C cannot issue that card. So that's Plainville in violation of 291C. Where does Post C's involvement come from? Well, Post C would also be violating that law. Post C would be issuing a card to someone that it knows for the purpose of hiring. The question is, does Post C have to issue that card regardless of anything else? That is, if requirements A, B, and C are met, does Connecticut require Post C to issue that card? And does the failure of Connecticut to issue that card when A, B, and C are met sufficiently shock because it is a violation? So it violates federal due process. That's the question. You're saying they have more discretion for any number of reasons, and therefore it's not shocking even if it wouldn't. But the question is, if it says A, B, and C, and they don't do it, is that enough to be shocking? If I may take a few seconds to answer His Honor's question. Your Honor, my answer to that question is, the first part of the question is no. Post C does not have to issue a card when it knows doing so would be a violation of 7-291C. And even if that were a misinterpretation or a misapplication of the statute, which I maintain, it does not rise to the level of conscious shocking. And your first answer is a matter of Connecticut law? My first answer- When you say they do not need to issue a card even if A, B, and C are met, you are saying under Connecticut law, they do not need to do it? Yes. Under 7-291C, they do not need to issue a card to an individual who legally cannot be hired as a police officer. We just ask that the court affirm the district court's decision. Thank you. Thank you, Counsel. We'll hear rebuttal. Thank you, Your Honor. There's something I want to touch on briefly there. Is that my friend here just argued that the state does not have an obligation to issue that card if they cannot work. That's not actually true. Nowhere in the statutes does it say that if a person cannot work- that when there are certain requirements, it is regardless of a broader context necessary for an agency in Connecticut to issue a card. I do not have that, Your Honor. I look at the plain language of the statute. No, I know you're looking at the plain language of the statute, and we know what plain language of the statute means federally.  Actually, we do. There's a statute that defines what plain language is, how we interpret statutes in Connecticut. It's Connecticut General Statute 1-2Z. I'd like a case. Well, that was- yes. I think you're looking for a case specifically saying when a- I don't mean a case that says this specific agency. I'd like a case that said to me, in Connecticut, if a language is A, B, and C, an agency does not look more properly. Actually, yes. Hold on. If you can give me one moment, Your Honor, I apologize. So this is actually from this court in 2018 in a case of Ace Partners versus Town of East Hartford. In determining whether the property interest exists, it turns on whether the issuing authority lacks discretion to deny the permit or the license. So I would turn then back to the statute and the regulations and say, when you meet those three requirements, you have to issue this card. Now, whether he can be employed or not actually is not within the purview of this agency. All it determines is certification or de-certification. And that's what we fall back on. Thank you. Thank you very much. Thank you both. We'll take the case under adjustment.